Go ahead. We're ready. Thank you. Good morning. Thank you, Your Honors. My name is Alan Frank. May it please the Court? I represent TDN Money Systems, Inc. in this case. I would respectfully request the opportunity to have four minutes of rebuttal in total. My plan is to address primarily the TDN appeal from the trial and also, in my initial colloquy, discuss at least briefly the issues pertaining to the counterappeal. Your Honors, I can tell from listening and observing that you've probably read every paper. I have no doubt in this case that you're very knowledgeable. Thank you. We avoid flipping coins and throwing darts to reach our decisions. I can say that. No question about it, so I won't go over things that I'm estimating that you truly know. The particular case, of course, involves a casino industry contract that contained a particularly worded Section 16 that the court interpreted under the Supreme Court, the Nevada Supreme Court interpreted as a perpetual contract. That, of course, is based on the Bell v. Levin case, a 2004 Supreme Court case. Throughout the pleadings, throughout the discovery, throughout every single aspect of this case, the position of the defendant was clear. They argued with the meaning of the contract term, Section 16, but they never argued that it somehow was mistaken, that the words were inappropriately used or that the wrong contract was used. The idea of mistake was first surfaced literally in the opening statement made by my worthy colleague, Mr. Pisanelli. Towards the end of that opening statement, we asked for clarification. We raised the objection, and we said, Your Honor, there is no mistake that's ever been alleged in this case. The parties have never asked for that interpretation. You've never heard anything from us. There are multiple pleadings. Judge Mahan, actually, in his very genial way, actually a very pleasant and engaging fellow, but nevertheless, he denied having made any ruling at all on the meaning of Section 16 of the agreement. Then when I showed him the language and I read it into the record, he, of course, remarked the way he remarked. I know by now, based on my observations of this panel, that Your Honors have read those remarks. I don't see an element of surprise here as far as that goes. First off, pretrial orders are liberally construed to permit any issues at trial that are embraced within their language in a district court's decision regarding the preclusive effect of a pretrial order on issues of law. In fact, a trial will not be disturbed. The evidence is in a clear abuse of discretion, but it's always sort of a moving target. Here, the limited evidence offered by GCA that the perpetuity clause was a mistake was not in conflict with the pretrial order, which embraced the issue of whether the parties intended to be bound by that clause. I think, as well, unlike the plaintiff in, I think, United States v. First National Bank, I find it, you know, I want you to respond to, it seems that TDN cannot reasonably argue that it was the victim of unfair surprise. First, it was TDN's, it was your own witness who testified that the perpetuity clause was a mistake. Second, TDN's CEO essentially conceded that the perpetuity clause was a mistake in the course of pretrial litigation and at the trial. And third, GCA expressly alleged the perpetuity clause was a mistake in its trial brief, which provided TDN with fair notice that the issue would be likely raised at trial. So, and if you look at First National Bank, by contrast, the bank did a complete 180-degree turn in its case presentation, flatly contradicting the facts it stipulated to in a pretrial order and presenting an entirely new defense theory on the first day of trial that it had never previously alleged or even implied. So, I'm having, you know, I guess what I'm saying is why is what I'm saying wrong here? Let me begin with Federal Rule of Civil Procedure 9b. 9b speaks to pleading special circumstances and 9b addresses fraud or mistake and 9b says specifically that a party must state with particularity the circumstances constituting fraud or mistake that was never done, ever at any time in the case. At no time was mistake raised. And in fact, during- What about the things that I all mentioned? I mean, they all talk about, they talk about mistake and maybe you need to also incorporate into it, which I find additionally, the District Court's jury instruction on interpretation of ambiguous contracts, which directed the jury to look beyond the expressed terms of the contract to determine the true and mutual intentions of the party and the District Court did not instruct the jury on the affirmative defense of mistake, thereby removing that issue from the jury deliberations, and you didn't object to any of that. We did. We actually had a charging conference and we had both submitted jury instructions and we both initially asked that the Section 16 language and the contract be developed in this way or that way, but both sets of instructions asked for, did not mention mistake, didn't even raise the issue of mistake. And then what happened was opposing counsel sought to withdraw his proposed jury instruction on mistake and eventually that's what Judge Mahan did. This particular case is- We really were- Surprise is not the word, shock would be the word. The pretrial order clearly explained to all of us, and there were several orders prior to that, that the judge would- Actually, it was his motion in limine order explained to us that the jury would be told about Section 16 and in particular that the contract was perpetual and that's what the language meant and no one was really there able to challenge it and Judge Mahan answered multiple orders in effect and those have been articulated, Your Honor, in our complaint. We were also precluded from offering any rebuttal, really rebuttal evidence as an example. There was an acquisition, and Your Honors may know this from the pleadings, by the defendant that changed it. So, GCA changed its name to Every Payments, but before that GCA acquired the assets of Western Money and in that acquisition there was a closing binder and one of the items in the closing binder was the exact template, the exact agreement, the exact agreement that was at issue and that had been signed only two or three days before the closing. That agreement is dated 4-21-2010 and the closing occurred, I want to say within a week or week and a half after that. We were blocked from showing that information to the jury. Ladies and gentlemen, this is the contract, not that the confused witness was saying, oh, there must be a mistake, but rather this, in fact, was GCA's contract. We used it. We never were permitted to use that. We also, when Judge Mann entered the order, maybe six or seven months before we actually reached trial, that, in fact, the contract was a perpetuities contract, our expert, Mr. Charles London, our damages expert, sought to and, in fact, did amend and supplement his report and expanded the damage amount to a number between, I believe it was $11 and $18 million. Practically speaking, Judge Mann just simply refused to let Mr. London explain why his supplemental report was being used because it was based on the judge's ruling that the contract was a perpetuities contract. Your Honors, yes, there really very much was surprise with respect. I say that. I would like to briefly address the cross-appeal. I do think Judge Mann got this right. The BD factors were applied. I think that the judge is charged with significant discretion in order to make such a ruling. The factors that were applied that he found in TDN's favor were numbers one and three. One was that whether the plaintiff's claim was brought in good faith, and three, whether the offeree's decision to reject the offer, in other words TDN's decision to reject the offer. Essentially what the district court said, you rejected two offers for $750,000 and $1 million and went to trial in a case that, in hindsight at least, it was maybe you were unlikely to win given your theory of contract interpretation and non-exclusive nature. However, the court said that at the time that you rejected those offers, you had already survived two summary judgment motions by GCA and prevailed in a partial summary judgment on a critical issue in the case, and that also your expert accountant projected a much larger monetary win if you prevailed at trial. So the district court basically said that you acted in good faith in rejecting the offers and that it wasn't beyond the pale of reasonable justification under the circumstances, right? That's right, Your Honor. The only thing I would add to that is if you careful reading of the Beattie case indicates that it's really not to be used as sort of a weapon to punish plaintiffs from bringing what might not be winning hands or cases, but nevertheless cases that are based on legitimate claims. Here there was a contract. There was a Section 16. There were multiple rulings. There was never any pleading whatsoever that had to do with a mistake. The evidence and the presentation made by Mr. Pisanelli went way beyond the joint pretrial order and raised that issue,  The district court faulted the other side, I think, for not they failed to break out its post-offer costs and attorney's fees required under the rule and asked for nearly $840,000 in total reflecting approximately three years of litigation. That's correct, Your Honor. And instead of just the post-offer costs, so the district court just said I can't analyze that factor and the decision didn't weigh in favor of either party on that particular factor. With respect to the initial argument, I would submit that, Your Honor, I understand the words you've used and I appreciate it. I'm receptive to them, but I think on reflection this case is really right in line with the 1981 decision that has really been cited, I estimated, nearly 200 times that wasn't favorably by this Ninth Circuit case. And in that case, the first national bank case, we believe that those facts were really quite similar except that in our case we had the editor, the addition of the predicate of mistake and FRCP 9B and we felt that that made it that much more meaningful. We had, I thought, very clear testimony from the designee, Mr. Lucchese, that the contract reason for the termination had nothing whatsoever to do with mistake. Do you want to save two minutes? Yes. Thank you, Your Honor. Good morning. Good morning, Your Honors. Todd Bice, may it please the Court, I will try and reserve no more than two minutes to address the fee issue. I don't really think that I will need a full 15 to address either of the subject matters, obviously depending upon Your Honor's questions. This case proceeded to a jury trial with a general verdict form, in fact, at the plaintiff's request. The jury simply rejected the plaintiff's claims in full and ruled in favor of my client every, which is referred to below as GCA, which is what I will refer to it as today. So on appeal now, the plaintiff claims that, well, the only basis that the jury apparently could have ruled against them is on this issue about whether or not the contract was somehow perpetual or whether it ever could have been terminated. There were a host of reasons below that were argued throughout the case and to the jury as to why the plaintiff's claims failed. There is no special interrogatory, and there was no special verdict form by which the jury was asked by the plaintiff to identify the basis for its verdict. So that is a problem, number one, I would submit with the plaintiff's position. Turning to what the plaintiff's argument is about the, quote, essentially, according to the plaintiff, this case turns, as I interpret their argument, on the United States versus First National Bank. I would submit, Your Honors, that case is fundamentally different. In that case, as the court will recall, the court allowed the government to make a brand-new argument for the first time at the opening day of trial and, in fact, then entered summary judgment based on that argument at the first day of trial in an argument that had never been advanced by anyone anywhere to the effect of that the party hadn't even obtained the money from the bank. That's fundamentally different here. In fact, I would point the court to the pretrial order. Well, you didn't include mistake in your answer or the pretrial order, right? Correct. We did not include an affirmative defense of mistake. That is correct. But everyone disputed from day one that this contract was ambiguous. Did you get an instruction on mistake? No, we did not get an instruction on mistake. We were given, including at their insistence, an instruction on ambiguity. And this is important, Your Honors, because Nevada law provides that probably the most compelling evidence of what a contract means is the party's course of dealing. The party had a multi-year course of dealing under this agreement, and at no point in time in their course of dealing did they ever claim that the contract was perpetual and could be made perpetual by simply giving an annual notice to extend the contract. In fact, the contract operated for years without any notice being given. Why? They had two old buddies, right? Right, because these parties understood that the contract continued unless a notice, an annual notice to terminate it was given. And that's exactly how they understood it, and that's how they operated for years. But that's not what the 2010 contract says. That is not what the 2010 contract literally says. If you read that Section 16 in isolation, I agree with that. But the point of the matter is the party's intent is obviously what the jury had determined. And they were given a comprehensive pattern jury instruction on how to do that. And they rejected the plaintiff's claims. Again, why? On the ambiguity? Yes. Did TDN object to that instruction? Not to the instruction that was given, no. But I understood his answer when I asked about that is he said, we did object. Now, I don't believe that's true to the general jury instruction about ambiguous contracts. In fact, as the court may recall, even during their opening arguments, they argued that the contract was ambiguous, that the words in the contract literally did not mean what the parties had bargained for. That was a position that TDN had taken since the inception of the case as well and started their opening statement with that proposition. So it was left to the jury to figure out based on the overall evidentiary picture, including documents, admissions, I would submit, from TDN, that they knew what this contract actually provided, their own longstanding course of dealing over the course of many years before the dispute developed. And with that, the jury then was left to decide who was going to prevail. And again, it's a general verdict form. There is no indication on which theory the jury rejected the plaintiff's claims. But I want to just – Can you respond to his surprise argument? Well, that's actually where I was turning, Your Honor. So the surprise element is directly contradicted by the pretrial order. If you look at page 12 of the pretrial order, which is in the record at page 27, the plaintiff's position right there is spelled out as to the effect of the court's summary judgment ruling. Its first three points were that the court's summary judgment ruling had somehow granted judgment effectively in its favor and that all it was going to have to argue about was damages. Now, we disputed that and even the district court disputed that that was the effect of it. And then look at point number four. And there are multilevels of what were the issues to be tried. To the extent that the court determines that any of issues one through three, which are the three that they identify about that summary judgment ruling, were not resolved by this court's decision, each would be an issue of law to be tried and determined at the trial. There was no surprise here. They themselves acknowledged that the parties disagreed about what the effect was of the district court's summary judgment ruling. And the parties tried that issue and when Judge Mahan realized how it was being used by the plaintiffs in the context of the trial with the evidence coming in, that is why he then clarified this was a pretrial ruling and I'm going to make it crystal clear that that is an issue for the jury to resolve. And again, I don't want to sound like a broken record on this point, but the jury was focused on the question about perpetuality or why the jury rejected the plaintiff's claims, but they did reject the plaintiff's claims. And there is absolutely no surprise here and the pretrial order itself confirms there was no surprise because the plaintiff's own position outlines why they believe the summary judgment ruling should be applied in a certain fashion and their own acknowledgement that if the court disagrees with us, that is an issue that will have to be tried. So you can't claim prejudice when in fact your own pretrial order characterizes that you recognize it will have to be tried if the court disagrees with your characterization of its own order. I think they were complaining about one of their witnesses not getting to testify. Their witnesses were allowed to testify. The problem became this. One of the witnesses that they wanted to examine was on subject matters that the witness had no personal knowledge because the witness wasn't there at the time of the transaction. And so therefore it wasn't that the witness wasn't allowed to testify. It was that they weren't allowed to examine a witness without a proper showing of foundation in the presence of the jury. But they could have called another witness. They could have called another witness. I don't believe that the district court excluded any of their witnesses, but you can't say, and this became, I think, a prime example when they wanted to introduce the point being made about this closing binder. The witness by which they wanted to use this closing binder was not even there, had no personal knowledge of it. There could lay no foundation. And so the district court rightly said, well, you can't examine this witness on a subject matter of which this witness has no knowledge. What they were really trying to do was just have the lawyer argue the case with an exhibit that the witness could not provide any testimony on. And the district court was well within its discretion to preclude that. So with my limited time available, I'll just quickly address the attorney's fees issue. The parties here in the contract bargained for attorney's fees. And, yes, they bargained for attorney's fees in the context of arbitration. But the parties entered into a stipulation in this case, and the district court essentially ignored that stipulation. The stipulation was TDN had actually commenced an arbitration. But the arbitration agreement did not cover all of the claims that TDN wanted to assert. So part of the claims were in arbitration. Part of the claims would be in district court. That was extremely inefficient for the parties. The parties both agreed that did not make a lot of sense. So they entered into a stipulation in the arbitration that said that they could remove the ‑‑ they would dismiss the arbitration claim, and that the parties would then litigate in district court, and all claims would be in the district court proceedings, including those that were otherwise subject to arbitration. But the plain language of the arbitration agreement only allowed fees and costs following a final arbitration decision, and that never happened. Well, except, Your Honor, I think it goes on to say, as I recall, it says that if you go to court, then you get all of your attorney's fees after that arbitration. And I agree, Your Honor. That's exactly what it says. But you can't read that agreement in isolation to the stipulation, because the parties stipulated right in the arbitration that they would agree to remove the claims from arbitration, allow them to go into district court, and that all subsidy of rights and arguments would remain because all they wanted to do was have a consolidated forum. That was the bargain. The stipulation to settle all claims in the district court only provided that no party is waiving any arguments or defenses on the merits. It doesn't say anything about fees and costs, does it? Well, it's ‑‑ So how can I read that into it? No, I don't think it says anything. No, it doesn't say anything about fees and costs. But what it says is that they're not waiving and giving up any of their substantive rights. Any arguments or defenses on the merits? Yes. That's not any and all rights. Well, I would submit that that agreement is broad enough to encompass their rights. I believe that an entitlement to attorney's fees is a merits issue under the contract. Just as though a contract provides that a party is entitled to a jury trial or if the parties waive a jury trial, that provision is a substantive provision of the parties. Why not simply say no party is waiving anything in the arbitration agreement? Yes. Yes, Judge Owens, you could say that. But it didn't say that. But I actually submit it does say that. Where does it say that? Because I think that's what the intent of the parties was. And so I do ‑‑ in hindsight, can people pick apart and say, well, you could have actually put attorney's fees in this provision, couldn't have you? Yes, we sure could have. But we had it very broad. The intent of the parties was simple. You're in arbitration. We don't want to have two proceedings going on simultaneously. You take that arbitration claim and you move it into the district court. That was the agreement. And all rights would remain. And I submit that was the agreement. And, by the way, no one has argued otherwise. There's no evidence in the district court that that is not what the intent of the parties was. The district court didn't analyze this. The district court didn't even get into that stipulation. It simply said as follows. The contract says arbitration. Since you removed it outside of arbitration, no fees. Didn't analyze what the effect of the stipulation was. Didn't take any evidence on that issue. And didn't resolve the issue. There is no evidence that the parties' agreement was not as I just characterized it. Remove this from arbitration. Put it into district court. All rights remain the same. Because, and I agree, Judge Owens, had it said that, had it used the exact words you used, would we be here arguing about fees? I submit not. But the district court didn't resolve that question. And I think that that language is broad enough to be read in that fashion. And if the district court's view was that it's not, then the district court should have held an evidentiary hearing to find out what exactly was the intent of the parties on that. Because there certainly isn't anything to the contrary. And the district court simply took the approach that says arbitration. You're not in arbitration. No fees. So turning away then, even setting that issue aside, we also had maintained that we are entitled to fees under the Nevada Supreme Court's decision or the Nevada Supreme Court's rule 68 under offers of judgment, which this circuit has said because it's a state law issue can be applied in federal proceedings. And we've articulated that issue in the brief. The district court, in our view, simply penalized us because our offer was too large. The district court did not like that you just lumped the whole thing in, for sure. The district court did not like that, but I don't think that that's a fair characterization of the record. And we've submitted in the supplemental appendix, we included all of our, we included a detailed affidavit setting out what the amounts were, and we included all of our billing records redacted solely to maintain privilege. So this was not some circumstance where we just threw out a large number and then said we're entitled to it. We had the detailed declaration establishing why that number was what it was and the billing records to back it up. And I see that I'm out of time, so I thank the court. So you want to reserve the balance for a rebuttal? Thank you very much, Your Honor. All right, thank you. Thank you. I have four very brief points. The first is that in the excerpts of record at page 23, which really begins, the document begins at page 21, that's the joint pretrial order, we have paragraphs 11 and 12. 11 reads, prior to finalizing the acquisition, TDN and Western Money executed a new dealer resale agreement with an effective date of April 21, 2010. And 12 says, the new agreement stated that TDN is an authorized non-exclusive seller to end-user casinos in Pennsylvania, New Jersey, New York, Delaware, and Maryland. Those are the stipulated facts. The argument that section 16 somehow was part of a mistake or mistaking contract or what have you, in my judgment, respectfully to the court, is not supported by those paragraphs. Point number two, Judge Mann actually vacated his summary judgment orally after he first denied having first made it. We were shocked. We were really quite surprised. Number three, as far as witnesses not being permitted to testify, Mr. Lucchese was the 30B6 designee. He would have- Well, but it wasn't, it clearly, you can't testify. If someone objects on foundation and you don't have personal knowledge, that's kind of evidence 101. He was involved with the closing. He admitted to that during his deposition. Well, but it was hearsay, right? He didn't have personal knowledge of it. I thought he did, Your Honor. I thought he did. Okay. And finally, the arbitration, the fourth point. I think that the meaning of that clause, at least to our way of thinking, was that it addressed a second trial and the cost of that, and there was no arbitration trial. And certainly the predicate of having a first verdict, a measuring method or standard and what have you, was not brought forward into the main trial. Thank you very much. Thank you. Thank you. With my one minute remaining, I wanted to turn back to this point, Judge Owens, to your comment about that last paragraph in the stipulation. It says, and I needed to refresh my recollection about it, no party is waiving any arguments or defenses on the merits. Then it goes on to say, rather, the purpose of this stipulation is to agree on a forum and ensure that all of the claims are litigated in the same forum. Again, reading that in total, I submit what that provision means, and I don't believe that anybody would really dispute this. What that means is we're going to take these, which were otherwise subject to arbitration, we're going to move them over into district court, all other rights remain the same. And just like you wouldn't have had a jury trial over in federal court on the claims that they remained in arbitration. But the fact is, is that the parties agreed because they wanted to save time, money, and expense by consolidating them into a single forum. No one was intending to give up the rights to say, by the way, if we win, we now forfeit our right to attorney's fees under this contract by moving it out of arbitration. And the district court simply disregarded that stipulation. And I thank the court for its time, unless you have questions of me. Thank you very much. I don't think we appear to. Thank you both for your helpful argument in this matter. It was well argued, and we always appreciate that. Thank you. Thank you. Court is recessed until 2 o'clock this afternoon. All rise. Court is recessed until 2 this afternoon.
judges: Callahan, Owens, Nelson